UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
11-cr-80170-RYSKAMP/HOPKINS
CASE NO. _____
18 U.S.C. §§ 1349, 1343, 1346

UNITED STATES OF AMERICA

v.

WAYNE E. KEPPLE,

Defendant.
_____/

FILED by __RB__ D.C.

SEP 2 9 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

## CRIMINAL INFORMATION

The United States of America, acting through its attorneys, charges:

1.    WAYNE E. KEPPLE is hereby made a defendant on the charges
stated below.

## INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

2.    Ryan International Airlines ("Ryan") is an entity organized and
existing under the laws of the State of Illinois with its principal place of business in
Rockford, Illinois.  Ryan provides air passenger and cargo services for corporations,
private individuals, professional sports teams, and the United States government.
During the period covered by this Information, a significant portion of Ryan's
business consisted of transporting personnel and cargo for the United States
Department of Defense, United States Department of Homeland Security, and
United States Marshals Service on domestic and international flights.

3.    During the period covered by this Information, Defendant KEPPLE was the Vice President of Ground Operations for Ryan. Among Defendant KEPPLE's responsibilities was contracting with providers of goods and services on behalf of Ryan and approving the invoices that were submitted by those providers to Ryan for payment. Defendant KEPPLE had a fiduciary duty to act honestly and faithfully in all business dealings with Ryan.

4.    Co-Conspirator Company A and Co-Conspirator Company B (collectively "Co-Conspirator Companies A/B") were entities organized and existing under the laws of the State of Florida with their principal places of business in Sunrise, Florida. Co-Conspirator Companies A/B were aviation fuel brokerage companies that purchased fuel from suppliers and sold it to individual airlines. Co-Conspirator Companies A/B were owned by Co-Conspirator 2 ("CC-2"). From October 2005 to August 2009, Co-Conspirator Companies A/B and CC-2 were engaged in the business of selling aviation fuel to Ryan for domestic and international flights.

5.    From October 2005 to August 2008, James E. Murphy ("Murphy") worked as a corporate bookkeeper for Co-Conspirator Companies A/B. Among his duties was making payments from the bank account of Co-Conspirator Companies A/B at the direction of CC-2. Murphy reported directly to CC-2.

6.    In August 2008, Murphy left his employment at Co-Conspirator Companies A/B and formed Co-Conspirator Company C, an entity organized and

2

existing under the laws of the State of Florida with its principal place of business in Davie, Florida. Co-Conspirator Company C was an aviation fuel brokerage company, and Murphy was its owner and operator. In August and September 2008, Murphy and Co-Conspirator Company C were engaged in the business of selling aviation fuel to Ryan for domestic and international flights.

7.     During the period covered by Count Three of this Information, David A. Chaisson ("Chaisson") was the owner of Co-Conspirator Company D, an entity organized and existing under the laws of the State of Indiana with its principal place of business in Indianapolis, Indiana. Chaisson and Co-Conspirator Company D were engaged in the business of performing ground security coordination, security personnel training, and flight management services for airlines based in the United States.

8.     In 2004, Defendant KEPPLE contacted Chaisson about Co-Conspirator Company D providing flight management services on domestic and international flights for Ryan in order to improve Ryan's on-time performance. After Ryan hired Co-Conspirator Company D, Chaisson flew on Ryan flights and obtained and coordinated aircraft services, such as aircraft cleaning, catering, crew meals and lodging, and baggage loading. Co-Conspirator Company D billed Ryan for its time and for the services that it obtained for Ryan flights. Defendant KEPPLE was responsible for approving the invoices submitted by Co-Conspirator Company D to Ryan.

3

9.     During the period covered by Count Five of this Information, Robert A. Riddell ("Riddell") was the owner of Co-Conspirator Company E, an entity organized and existing under the laws of the State of Florida with its principal place of business in Pasco County, Florida.  Riddell and Co-Conspirator Company E were engaged in the business of performing ground security and ground services coordination for airlines in the United States and Europe.

10.     In 2005, Defendant KEPPLE contacted Riddell about Co-Conspirator Company E providing security and ground services coordination for Ryan flights. After Ryan hired Co-Conspirator Company E, Riddell provided security for Ryan flights and obtained and coordinated ground services at destinations in Europe.  Co-Conspirator Company E billed Ryan for its time and for the services that it obtained for Ryan flights.  Defendant Kepple was responsible for approving the invoices submitted by Co-Conspirator Company E to Ryan.

11.     Various companies and individuals not made defendants in this Information participated as co-conspirators in the offenses charged herein and performed acts and made statements in furtherance thereof.  Whenever this Information refers to any act, deed, or transaction of any company, it means that the company engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

4

## COUNT ONE - CONSPIRACY
### (18 U.S.C. § 1349)

12.     Each and every allegation contained in paragraphs 1-6 and 11 of this
Information is hereby realleged as if fully set forth in this Count.

### DESCRIPTION OF THE OFFENSE

13.     Beginning at least as early as October 2005 and continuing thereafter
at least through August 2009, the exact dates being unknown to the United States,
in the Southern District of Florida and elsewhere, Defendant WAYNE E. KEPPLE,
Co-Conspirator Companies A/B owner CC-2, and other co-conspirators did
unlawfully, willfully, and knowingly conspire, combine, confederate, and agree
together and with each other to commit offenses against the United States, to wit,
to violate Title 18, United States Code, Sections 1343 and 1346, in violation of 18,
United States Code, Section 1349.  Murphy participated in the conspiracy from as
early as October 2005 until at least September 2008.

14.     It was a part and an object of the conspiracy that Defendant KEPPLE,
CC-2, Murphy, and their co-conspirators unlawfully, willfully, and knowingly
devised and intended to devise a scheme and artifice to defraud and deprive Ryan of
the honest and faithful services of Defendant KEPPLE by making kickback
payments to Defendant KEPPLE and concealing material information from Ryan,
and for the purpose of executing such scheme and artifice, and attempting to do so,
would and did transmit and cause to be transmitted by means of wire

communication in interstate commerce certain writings, signals, and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346.

## THE MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

The scheme and artifice was carried out in the following manner and means, among others:

15.    In or about October 2005, at the request of Defendant KEPPLE, CC-2, Murphy, and others known and unknown to the United States, began making kickback payments to Defendant KEPPLE in exchange for Defendant KEPPLE awarding business for fuel supply services to Co-Conspirator Companies A/B. During the course of the scheme, Defendant KEPPLE solicited and accepted over $88,000.00 in kickback payments for fuel supply services that Co-Conspirator Companies A/B provided to Ryan.

16.    In or about August 2008, at the request of Defendant KEPPLE, Murphy began making kickback payments to Defendant KEPPLE for awarding business for fuel supply services to Co-Conspirator Company C. During the course of the scheme, Defendant KEPPLE solicited and accepted over $42,000.00 in kickback payments for fuel supply services that Co-Conspirator Company C provided to Ryan.

17.    In his capacity as an employee of Ryan, Defendant KEPPLE provided favorable treatment to CC-2 and Murphy, including continuing to award business to Co-Conspirator Companies A/B and Co-Conspirator Company C in exchange for

6

kickback payments.   Defendant KEPPLE, CC-2, and Murphy foresaw or reasonably should have foreseen that Ryan might suffer an economic harm as a result of their breach of Defendant KEPPLE's fiduciary duty to Ryan.

18.     CC-2, Murphy, and others known and unknown to the United States took steps to hide, conceal, and cover up their activity and the nature and scope of their dealings with Defendant KEPPLE, including wiring payments to the personal bank account of Defendant KEPPLE and making secret cash payments.

## OVERT ACTS

In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of Florida and elsewhere:

19.     From in or about October 2005 through at least August 2009, CC-2 and others known and unknown to the United States made payments to Defendant KEPPLE in cash in the Southern District of Florida and elsewhere.

20.     From in or about October 2005 through at least August 2008, Murphy issued checks and caused wire transfers totaling more than $88,000.00 to be made from the bank account of Co-Conspirator Companies A/B to Defendant KEPPLE's personal bank account in the Southern District of Florida and elsewhere.

21.     From in or about August 2008 through September 2008, Murphy issued checks and caused interstate wire transfers totaling more than $42,000.00 to

7

be made from the bank account of Co-Conspirator Company C to Defendant

KEPPLE's personal bank account in the Southern District of Florida and elsewhere.

## JURISDICTION AND VENUE

22.    The conspiracy charged in Count One of this Criminal Information was

formed in part and carried out, in part, in the Southern District of Florida in

Broward and Palm Beach Counties within the five years preceding the filing of this

Criminal Information.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO - WIRE FRAUD
### (18 U.S.C. §§ 1343, 1346)

The United States of America further charges:

23.    Each and every allegation contained in paragraphs 1-6, 11, and 13-22

of this Information is hereby realleged as if fully set forth in this Count.

24.    Beginning at least as early as October 2005 and continuing thereafter

at least through August 2009, the exact dates being unknown to the United States,

in the Southern District of Florida and elsewhere, Defendant

### WAYNE E. KEPPLE,

CC-2, and others unlawfully, willfully, and knowingly devised and intended to

devise a scheme and artifice to defraud and deprive Ryan of the honest and faithful

services of Defendant KEPPLE by making kickback payments to Defendant

KEPPLE and concealing material information from Ryan, and for the purpose of

executing such scheme and artifice to defraud and deprive, and attempting to do so,

8

did transmit and cause to be transmitted by means of wire communication in interstate commerce, the following writings, signals, and sounds:

25.     On or about November 16, 2007, in the Southern District of Florida and elsewhere, CC-2 and Murphy caused a wire transfer in the amount of $10,000 to be made from Co-Conspirator Company A's bank account in Sunrise, Florida, to Defendant KEPPLE's personal bank account in Loves Park, Illinois.

## JURISDICTION AND VENUE

26.     The offense charged in Count Two of this Criminal Information was formed in part and carried out, in part, in the Southern District of Florida in Broward and Palm Beach Counties within the five years preceding the filing of this Criminal Information.

All in violation of Title 18, United States Code, Sections 1343 and 1346.

## COUNT THREE - CONSPIRACY
### (18 U.S.C. § 1349)

The United States of America further charges:

27.     Each and every allegation contained in paragraphs 1-3, 7-8, and 11 of this Information is hereby realleged as if fully set forth in this Count.

## DESCRIPTION OF THE OFFENSE

28.     Beginning at least as early as January 2005 and continuing thereafter at least through July 2008, the exact dates being unknown to the United States, in the Southern District of Florida and elsewhere, Defendant WAYNE E. KEPPLE and Chaisson did unlawfully, willfully, and knowingly conspire, combine, confederate,

9

and agree together and with each other to commit offenses against the United

States, to wit, to violate Title 18, United States Code, Sections 1343 and 1346, in

violation of 18, United States Code, Section 1349.

     29.    It was a part and an object of the conspiracy that Defendant KEPPLE

and Chaisson unlawfully, willfully, and knowingly devised and intended to devise a

scheme and artifice to:

> (a)    defraud Ryan and obtain money and property by means of
>
> materially false and fraudulent pretenses, representations, and
>
> promises; and

> (b)    defraud and deprive Ryan of the honest and faithful services of
>
> Defendant KEPPLE through kickbacks and the concealment of
>
> material information from Ryan,

and for the purpose of executing such scheme and artifice, and attempting to do so,

would and did transmit and cause to be transmitted by means of wire

communication in interstate commerce certain writings, signals, and sounds, in

violation of Title 18, United States Code, Sections 1343 and 1346.

## THE MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

    The scheme and artifice was carried out in the following manner and means,

among others:

     30.    In or about January 2005, at the request of Defendant KEPPLE,

Chaisson began submitting fabricated invoices on behalf of Co-Conspirator

Company D to Ryan for services that had not been provided. Defendant KEPPLE approved payment of the fraudulent invoices. Chaisson paid to Defendant KEPPLE as kickbacks a portion of the money received from Ryan as payment for the fraudulent invoices. During the course of the scheme, Chaisson submitted, and Defendant KEPPLE approved and directed payment of, $101,454.96 in fraudulent invoices.

31.     Defendant KEPPLE further solicited and accepted kickback payments totaling approximately $8,000.00 in relation to flight management services that Co-Conspirator Company D did provide to Ryan.

32.     In his capacity as an employee of Ryan, Defendant KEPPLE provided favorable treatment to Chaisson, including continuing to award business to Co-Conspirator Company D for flight management services, in exchange for kickback payments. Defendant KEPPLE and Chaisson foresaw or reasonably should have foreseen that Ryan might suffer an economic harm as a result of their breach of Defendant KEPPLE's fiduciary duty to Ryan.

33.     Chaisson took steps to hide, conceal, and cover up his activity and the nature and scope of his dealings with Defendant KEPPLE, including wiring payments to the personal bank account of Defendant KEPPLE, which Defendant KEPPLE accessed near his home located in the Southern District of Florida.

11

## OVERT ACTS

In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of Florida and elsewhere:

34.     From in or about January 2005 through at least September 2006, Chaisson submitted over $100,000.00 in fraudulent invoices from Co-Conspirator Company D to Ryan.  Defendant KEPPLE directed payment of all of the invoices on behalf of Ryan with knowledge that they were fraudulent.

35.     From in or about April 2005 through November 2007, Chaisson issued checks and caused interstate wire transfers totaling more than $60,000.00 to be made from the bank account of Co-Conspirator Company D to Defendant KEPPLE's personal bank account in the Southern District of Florida and elsewhere.

## JURISDICTION AND VENUE

36.     The conspiracy charged in Count Three of this Criminal Information was formed in part and carried out, in part, in the Southern District of Florida in Palm Beach County within the five years preceding the filing of this Criminal Information.

All in violation of Title 18, United States Code, Section 1349.

## COUNT FOUR - WIRE FRAUD
### (18 U.S.C. §§ 1343, 1346)

The United States of America further charges:

37. Each and every allegation contained in Paragraphs 1-3, 7-8, 11, and 28-36 of this Information is hereby realleged as if fully set forth in this Count.

38. Beginning at least as early as January 2005 and continuing thereafter at least through July 2008, the exact dates being unknown to the United States, in the Southern District of Florida and elsewhere, Defendant

## WAYNE E. KEPPLE

and Chaisson unlawfully, willfully, and knowingly devised and intended to devise a scheme and artifice to:

> (a) defraud Ryan and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; and
>
> (b) defraud and deprive Ryan of the honest and faithful services of Defendant Kepple through kickbacks and the concealment of material information from Ryan,

and for the purpose of executing such scheme and artifice to defraud and deprive, and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce, the following writings, signals, and sounds:

39. On or about June 21, 2007, in the Southern District of Florida and elsewhere, Chaisson caused a wire transfer in the amount of $1,500.00 to be made from Co-Conspirator Company D's bank account in Indianapolis, Indiana, to Defendant KEPPLE'S personal bank account in Lake Worth, Florida.

13

## JURISDICTION AND VENUE

40.    The offense charged in Count Four of this Criminal Information was formed in part and carried out, in part, in the Southern District of Florida in Palm Beach County within the five years preceding the filing of this Criminal Information.

All in violation of Title 18, United States Code, Sections 1343 and 1346.

### COUNT FIVE - CONSPIRACY
### (18 U.S.C. § 1349)

The United States of America further charges:

**41.**    Each and every allegation contained in paragraphs 1-3 and 9-11 of this Information is hereby realleged as if fully set forth in this Count.

### DESCRIPTION OF THE OFFENSE

42.    Beginning at least as early as March 2006 and continuing thereafter at least through August 2009, the exact dates being unknown to the United States, in the Southern District of Florida and elsewhere, Defendant WAYNE E. KEPPLE and Riddell did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Title 18, United States Code, Sections 1343 and 1346, in violation of 18, United States Code, Section 1349.

43.    It was a part and an object of the conspiracy that Defendant KEPPLE and Riddell unlawfully, willfully, and knowingly devised and intended to devise a scheme and artifice to:

14

> (a)   defraud Ryan and obtain money and property by means of
>        materially false and fraudulent pretenses, representations, and
>        promises; and
>
> (b)   defraud and deprive Ryan of the honest and faithful services of
>        Defendant KEPPLE through kickbacks and the concealment of
>        material information from Ryan,

and for the purpose of executing such scheme and artifice, and attempting to do so,
would and did transmit and cause to be transmitted by means of wire
communication in interstate commerce certain writings, signals, and sounds, in
violation of Title 18, United States Code, Sections 1343 and 1346.

## THE MANNER AND MEANS BY WHICH THE
## CONSPIRACY WAS CARRIED OUT

The scheme and artifice was carried out in the following manner and means,
among others:

44.    In or about March 2006, at the request of Defendant KEPPLE, Riddell
began submitting fabricated invoices on behalf of Co-Conspirator Company E to
Ryan for services that had not been provided.  Defendant KEPPLE approved
payment of the fraudulent invoices.  Riddell paid to Defendant KEPPLE as
kickbacks a portion of the money received from Ryan as payment for the fraudulent
invoices.  During the course of the scheme, Riddell submitted, and Defendant
KEPPLE approved and directed payment of, $131,540 in fraudulent invoices.

15

45.     Defendant KEPPLE further solicited and accepted additional kickback payments totaling more than $265,000 in relation to the services that Co-Conspirator Company E did provide to Ryan.

46.     In his capacity as an employee of Ryan, Defendant KEPPLE provided favorable treatment to Riddell, including continuing to award business to Co-Conspirator Company E for security and ground services coordination, in exchange for kickback payments.  Defendant KEPPLE and Riddell foresaw or reasonably should have foreseen that Ryan might suffer an economic harm as a result of their breach of Defendant KEPPLE's fiduciary duty to Ryan.

47.     Riddell took steps to hide, conceal, and cover up his activity and the nature and scope of his dealings with Defendant KEPPLE, including wiring payments to the personal bank account of Defendant KEPPLE, which Defendant KEPPLE accessed near his home located in the Southern District of Florida.

## OVERT ACTS

In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of Florida and elsewhere:

48.     From in or about March 2006 through at least March 2009, Riddell submitted over $130,000 in fraudulent invoices from Co-Conspirator Company E to Ryan.  Defendant KEPPLE directed payment of all of the invoices on behalf of Ryan with knowledge that they were fraudulent.

49.   From in or about May 2006 through August 2009, Riddell issued

checks, made cash deposits, and caused wire transfers to be made in order to

transfer a total of more than $330,000 in kickback payments from the bank account

of Co-Conspirator Company E to Defendant KEPPLE's personal bank account in

Lake Worth, Florida, in the Southern District of Florida, and elsewhere.

## JURISDICTION AND VENUE

50.   The conspiracy charged in Count Five of this Criminal Information

was formed in part and carried out, in part, in the Southern District of Florida in

Palm Beach County within the five years preceding the filing of this Criminal

Information.

All in violation of Title 18, United States Code, Section 1349.

## COUNT SIX - WIRE FRAUD
### (18 U.S.C. §§ 1343, 1346)

The United States of America further charges:

51.   Each and every allegation contained in Paragraphs 1-3, 9-11, and 42-

50 of this Information is hereby realleged as if fully set forth in this Count.

52.   Beginning at least as early as March 2006 and continuing thereafter at

least through August 2009, the exact dates being unknown to the United States, in

the Southern District of Florida and elsewhere, Defendant

## WAYNE E. KEPPLE

and Riddell unlawfully, willfully, and knowingly devised and intended to devise a

scheme and artifice to:

17

(a)    defraud Ryan and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; and

(b)    defraud and deprive Ryan of the honest and faithful services of Defendant KEPPLE through kickbacks and the concealment of material information from Ryan,

and for the purpose of executing such scheme and artifice to defraud and deprive, and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce, the following writings, signals, and sounds:

53.    On or about December 16, 2008, Riddell caused a wire transfer in the amount of $9,000 to be made from Co-Conspirator Company E's bank account in Wesley Chapel, Florida, to Defendant KEPPLE's personal bank account in Loves Park, Illinois.

## JURISDICTION AND VENUE

54.    The offense charged in Count Six of this Criminal Information was formed in part and carried out, in part, in the Southern District of Florida in Palm Beach County within the five years preceding the filing of this Criminal Information.

All in violation of Title 18, United States Code, Sections 1343 and 1346.

18

Date: *September 29, 2011*

_____
Sharis A. Pozen
Acting Assistant Attorney General
Antitrust Division

_____
Scott D. Hammond
Deputy Assistant Attorney General for
Criminal Enforcement

_____
John F. Terzaken
Director of Criminal Enforcement

_____
Nezida S. Davis
Chief, Atlanta Field Office
Antitrust Division

_____
Brooks Mackintosh, Trial Attorney
Georgia Bar #464115
James J. Kurosad, Assistant Chief
Florida Bar #0794041
Atlanta Field Office
Antitrust Division
U.S. Department of Justice
75 Spring Street, S.W., Suite 1176
Atlanta, GA 30303
Tel:  (404) 331-7100
Fax: (404) 331-7110
Brooks.Mackintosh@usdoj.gov

Nancy McMillen
Shane Cralle
Richard A. Hellings, Jr.
Trial Attorneys
National Criminal Enforcement Section
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., Suite 11110
Washington, DC  20530
Tel:  (202) 307-5777

UNITED STATES OF AMERICA

vs.

WAYNE E. KEPPLE,

_____ /
                    Defendant.

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

_____ Miami    _____ Key West
_____ FTL    __X__ WPB    _____ FTP

New Defendant(s)          Yes _____   No _____
Number of New Defendants
Total number of counts          ___6___

I do hereby certify that:

1.  I have carefully considered the allegations of the Information, the number of defendants, the number of probable witnesses and the legal complexities of the Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:    (Yes or No)    NO___
    List language and/or dialect    _____

4.  This case will take    __0__    day for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                          (Check only one)

    I     0 to 5 days         __X__        Petty      _____
    II    6 to 10 days        _____      Minor      _____
    III   11 to 20 days       _____      Misdem.    _____
    IV    21 to 60 days       _____      Felony     __X__
    V     61 days and over    _____

6.  Has this case been previously filed in this District Court? (Yes or No)    NO___
    If yes:
    Judge: _____    Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    (Yes or No)    NO___
    If yes:
    Magistrate Case No. _____

    Related Miscellaneous numbers:    U.S. v. Murphy, 11-80135-CR-COHN; U.S. v. Chaisson, 11-80136-CR-COHN
    Defendant(s) in federal custody as of    _____
    Defendant(s) in state custody as of      _____
    Rule 20 from the    _____    District of    _____

    Is this a potential death penalty case? (Yes or No)    NO___

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes    __X__ No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    _____ Yes    __X__ No

_____
BROOKS MACKINTOSH
TRIAL ATTORNEY
U. S. DEPARTMENT OF JUSTICE, ANTITRUST DIVISION
Georgia Bar No. 464115/Court No. A5501638

*Penalty Sheet(s) attached                                          REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **WAYNE E. KEPPLE**

**Case No**: _____

Count#: 1

 Conspiracy to Commit Wire Fraud _____

 in violation of 18 U.S.C. §1349 _____

**\*Max. Penalty:** Thirty (30) years' imprisonment, five (5) years' supervised release, $1,000,000 fine

Count #: 2

 Wire Fraud _____

 in violation of 18 U.S.C. §§1343, 1346 _____

**\*Max. Penalty:** Thirty (30) years' imprisonment, five (5) years' supervised release, $1,000,000 fine

Count #: 3

 Conspiracy to Commit Wire Fraud _____

 in violation of 18 U.S.C. §1349 _____

**\*Max. Penalty:** Thirty (30) years' imprisonment, five (5) years' supervised release, $1,000,000 fine

Count #: 4

 Wire Fraud _____

 in violation of 18 U.S.C. §§1343, 1346 _____

**\*Max. Penalty:** Thirty (30) years' imprisonment, five (5) years' supervised release, $1,000,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 5

 Conspiracy to Commit Wire Fraud

 in violation of 18 U.S.C. §1349

**\*Max. Penalty:** Thirty (30) years' imprisonment, five (5) years' supervised release, $1,000,000 fine


Count #: 6

 Wire Fraud

 in violation of 18 U.S.C. §§1343, 1346

**\*Max. Penalty:** Thirty (30) years' imprisonment, five (5) years' supervised release, $1,000,000 fine


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   11-cr-80170-KLR |
| | ) | |
| WAYNE E. KEPPLE | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

MICHAEL C. GRIECO
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*